Brister, J.
It appears from the evidence that on the 2d day of December, 1907, a petition containing one hundred and seven names of alleged electors of the village of Johnston, Ohio, was presented to the village council, praying for an election under the provisions of Section 4364-20®, to determine whether the sale of intoxicating liquors as a beverage should be prohibited within the limits of the village of Johnstown. The council having determined that the petition contained the requisite number of electors, duly ordered the election, which was held on the 23d day of December, 1907, under proper notice published as -required by law. The result of said election was one hundred and seven votes for, and one hundred and forty-five votes against, the sale of intoxicating liquors as a beverage — majority of thirty-eight votes. The evidence also established the fact that the last preceding municipal election prior to the date when the local option election occurred, was the general election held on the 5th day of November, 1907, at which election two hundred and forty votes were cast in said village. The testimony further showed that of the one hundred and seven petitioners whose names appeared upon the petition to the council for the election, one A. *189 B. Myers, although a resident and qualified elector of Johnstown at the time his name was signed to the petition, was not a resident and qualified elector at the date when the petition was presented to the council. The other evidence failed to show that any other of the one hundred and six remaining petitioners was not at the time of the presentation of-the petition a qualified elector of the said village.
The contention of the plaintiff’s counsel is that the language, "the qualified electors at the last preceding municipal election,” means the number of qualified electors who resided in the village at the time of the holding of the last preceding municipal election, and has no reference to the number of votes cast at the said election, • and the said plaintiff undertook to show that -in addition to the number of two hundred and forty electors, who, as shown by the poll book, voted at the last preceding municipal election, there was a large number of qualified electors at the time of that election who did not vote at said election, and that the total of those who voted and those who'did not vote brought the number of petitioners, one hundred and six, below the forty per cent, of the qualified electors required by the section of the statute above quoted.
Was it competent for the plaintiff in such a contest to introduce the poll book and -tally sheet of the preceding election, and supplement the same by oral evidence that certain other persons whose names did not appear therein as having voted at said election were qualified electors, for the purpose of showing the number of qualified electors existing at the time of the last preceding municipal election, as a basis for determining the forty per cent, mentioned in -said section 1
This question involves a construction of Section 4364-20e. This section provides that the petition, when presented to council of municipalities divided into wards shall be deemed sufficient when it is signed by as many qualified electors as shall equal in number forty per cent, of the number of votes cast at the last preceding general election, and then follow the words, "and in all other municipalities forty per cent, of the qualified electors at the last preceding municipal election.” While under the authorities the poll book and tally sheets are presumptive evidence of "the number of votes east and of the persons who voted *190 at an election, no presumption arises in the absence of any statute making them prima facie evidence thereof, that the persons whose names appear upon a poll book or tally sheet, were in fact qualified electors ;• at least this could be so in a controversy wherein it is essential to allege and prove what persons at any given time, of any given district, were qualified electors therein.
If it were necessary, therefore, in order to determine the number of persons needed upon a petition for such an election, to prove the number of qualified electors of a municipality at a given time, by evidence which under the requirements of the law would be the best evidence, such a task, while perhaps not impossible, would involve an enormous expense and, for a long time at least, would practically monopolize the time of the court. It would render a contest in a Beal law election case, in villages, impracticable.
It is well settled that, except as to matters jurisdictional, the presumption of validity and regularity surrounds all the proceedings which lead up to the result of such an election. If a petition is presented to a council; if the council act favorably upon it, and order an election; if the election be held in pursuance of notice; if the result is certified to the council and entered upon its record, when it comes to a contest of said election, no matter upon what or how many grounds, it is well settled that the law presumes that the petition was proper in form and substance, and contained the requisite number of qualified electors; that the resolution ordering the election was in proper form and duly passed; that the notice of the election was in proper form and duly published; that the election was duly held at the proper time; that the certificate truly states the number of votes pro and con, and that the announced result must stand unless these presumptions or some of them are overcome by competent evidence.
If under such a complaint as is contained in the first assignment set forth in plaintiff’s petition, and under the construction which plaintiff’s counsel put upon the section above quoted, the invalidity of the election must be established by competent evidence, the plaintiff must assume a. task which this court is *191 clearly of the opinion it was never the intention of the Legislature to impose upon any elector in the contest of an election under this law.
Besides, the court is of the opinion that the language of this section does not contemplate or require any such construction. There is no reason why, in a municipality divided into wards, it should be made easy to determine the number of names needed upon such a petition, while in a municipality not so divided it should be made almost impossible. It was the object and intention of the Legislature by this section merely to provide that it should be the last general election in the one case and the last municipal election in the other. ,
In addition to the requirement of the context 'that these words should be held to mean the qualified electors who voted at the last preceding municipal election, the words themselves do not require any different construction. .The construction sought by plaintiff’s counsel would be plausible if the language of the section were “forty per cent, of the qualified electors ai the tim.e of the last municipal election.” The language “qualified electors at the last preceding municipal election” means, and the court holds that it means, qualified electors who voted at the last preceding municipal election.
And this is necessarily so, because of the literal meaning of the words employed, apart from any judicial construction of the language itself. The little preposition at plays an all-important part in this matter. What does at mean?
Webster says, that primarily ai expresses the relations of presence; nearness in place or time; presence in something; occupied with.
The Standard Dictionary says that at means, connected with; present in; engaged in.
So that we do not have to read anything into this clause, or • add a single word to it,'to give it the interpretation that this court does.
Take the clause, “qualified electors at the last preceding municipal election” and omitting the at, ■ substitute any of its equivalents: qualified electors present in the last preceding municipal election; qualified electors occupied with the last mu *192 nicipal election; qualified electors connected with the last municipal election; qualified electors engaged in the last municipal election.
Smythe & Smythe, J. R. Fitzgibbon and Henry Gumble, for plaintiff.
Kíbler & Montgomery and J. A. White, contra.
These are all equivalent to qualified electors who voted at the last municipal election.
The second and third objections assigned to the validity of this election do not state facts sufficient to constitute any valid objection thereto, for the reason that it does not appear from any allegation therein contained that, even if there were certain persons whose names appeared upon the petition, who did not sign or authorize the signature of their names to the petition; and even if there were certain persons who signed who were not qualified electors, and these names were stricken from the petition, it would not then have left the number remaining upon the petition less than forty per cent, required by the statute.
This court permits the introduction of the tally sheet and poll book of the election of November 5, 1907, for the purpose only of determining the number of votes cast at that election. This fixes that number at two hundred and forty, which fixes the number ’of petitioners required at ninety-six; and the court declines to permit plaintiff to show that at the time of the November elections there were qualified electors of said village who did not vote at said election. Such evidence is immaterial.
The defendant at the close of plaintiff’s testimony having moved the court to render judgment in favor of the defendant and to dismiss the plaintiff’s petition upon the merits, the court sustains this motion, dismisses the petition and renders judgment for the defendant, and the court further finds that said election was held in all respects in accordance with law and is a valid and legal election.